100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849

**(Publication page references are not available for this document.)**



Supreme Court of Ohio.

WESTFIELD INSURANCE COMPANY
v.
**GALATIS** et al., Appellants; Aetna Casualty & Surety Company, Appellee.

**No. 2002-0932.**

Submitted March 26, 2003.
Decided Nov. 5, 2003.

 Insurer for corporate employer of passenger's father brought action against passenger's survivors and insurer for corporate employer of passenger's mother for declaratory judgment on underinsured motorist (UIM) coverage. Estate filed counterclaims and cross-claims against both insurers. The Court of Common Pleas, Summit County, granted summary judgment for insurers and dismissed counterclaims and cross-claims. Parties appealed. The Court of Appeals, Baird, J., affirmed. Review was granted based on certified conflict. The Supreme Court, O'Connor, J., held that: (1) a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist (UM/UIM) coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment, limiting *Scott- Pontzer v. Liberty Mut. Fire Ins. Co.,* 85 Ohio St.3d 660, 710 N.E.2d 1116; (2) where a policy designates a corporation as a named insured, the designation of "family members" of the named insured does not extend coverage to a family member of an employee of the corporation, unless that employee is also a named insured, overruling *Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.,* 86 Ohio St.3d 557, 715 N.E.2d 1142; and (3) when a court decides whether a claimant is insured under a policy, ambiguities are construed in favor of the policyholder, not the claimant.

 Affirmed.

 Moyer, C.J., concurred and filed opinion joined by Lundberg Stratton, J.

 Alice Robie Resnick, J., dissented and filed opinion.

 Francis E. Sweeney, Sr., J., dissented and filed opinion in which Resnick, J., concurred.

 Pfeifer, J., dissented and filed opinion.

**[1] Courts** ⚷➔89

106k89 Most Cited Cases

Stare decisis is the bedrock of the American judicial system.

**[2] Courts** ⚷➔89
106k89 Most Cited Cases

Well-reasoned opinions become controlling precedent, thus creating stability and predictability in the legal system.

**[3] Courts** ⚷➔89
106k89 Most Cited Cases

It is only with great solemnity and with the assurance that the newly chosen course for the law is a significant improvement over the current course that the Supreme Court should

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849
**(Publication page references are not available for this document.)**

depart from precedent.

**[4] Insurance** &#9993;**1713**
217k1713 Most Cited Cases

An insurance policy is a contract.

**[5] Constitutional Law** &#9993;**113**
92k113 Most Cited Cases

The state constitutional protection of contracts is coextensive with that of the federal constitution. U.S.C.A. Const. Art. 1, § 10, cl. 1; Const. Art. 2, § 28.

**[6] Contracts** &#9993;**147(1)**
95k147(1) Most Cited Cases

When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement.

**[7] Insurance** &#9993;**1810**
217k1810 Most Cited Cases

**[7] Insurance** &#9993;**1813**
217k1813 Most Cited Cases

Courts examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy.

**[8] Insurance** &#9993;**1822**
217k1822 Most Cited Cases
Courts look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy.

**[9] Contracts** &#9993;**147(2)**
95k147(2) Most Cited Cases

When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.

**[10] Contracts** &#9993;**143(2)**
95k143(2) Most Cited Cases

A contract is unambiguous if it can be given a definite legal meaning.

**[11] Evidence** &#9993;**448**
157k448 Most Cited Cases

Where a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent.
**[12] Contracts** &#9993;**147(2)**
95k147(2) Most Cited Cases

A court is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties.

**[13] Contracts** &#9993;**176(2)**
95k176(2) Most Cited Cases

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849
**(Publication page references are not available for this document.)**

It is generally the role of the finder of fact to resolve ambiguity in a contract.

**[14] Contracts** 🔗**155**
95k155 Most Cited Cases

Where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party.

**[15] Insurance** 🔗**1832(1)**
217k1832(1) Most Cited Cases

An ambiguity in an insurance contract is ordinarily interpreted against the insurer as the drafter and in favor of the insured.

**[16] Insurance** 🔗**1816**
217k1816 Most Cited Cases

**[16] Insurance** 🔗**1832(1)**
217k1832(1) Most Cited Cases

Although, as a rule, a policy of insurance that is reasonably open to different interpretations will be construed most favorably for the insured, that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy.

**[17] Insurance** 🔗**1831**
217k1831 Most Cited Cases

Where the plaintiff is not a party to the contract of insurance, the plaintiff is not in a position to urge, as one of the parties, that the contract be construed strictly against the other party; this rings especially true where expanding coverage beyond a policyholder's needs will increase the policyholder's premiums.

**[18] Automobiles** 🔗**193(8.1)**
48Ak193(8.1) Most Cited Cases

A motor vehicle operated by an employee of a corporation in the course and scope of employment is operated by and for the corporation.

**[19] Insurance** 🔗**2660**
217k2660 Most Cited Cases

A corporate named insured's employee in the scope of employment qualifies as "you" and, thus, an "insured" entitled to uninsured motorist (UM) coverage.

**[20] Insurance** 🔗**2100**
217k2100 Most Cited Cases

An insured can be the policyholder or another who is entitled to insurance coverage under the terms of the policy.

**[21] Insurance** 🔗**2100**
217k2100 Most Cited Cases

When a court decides whether a claimant is insured under a policy, ambiguities are construed in favor of the policyholder, not the claimant.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2003 WL 22461899
100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849
(Publication page references are not available for this document.)

**[22] Insurance** ☞**2100**
217k2100 Most Cited Cases

While an ambiguity is construed in favor of one who has been determined to be insured, an ambiguity in the preliminary question of whether a claimant is insured is construed in favor of the policyholder.

**[23] Insurance** ☞**2100**
217k2100 Most Cited Cases

**[23] Insurance** ☞**2661**
217k2661 Most Cited Cases

The second class of insureds in definition of "insured" to include family members of named insured that is an individual applies when the policyholder is an individual, but is inapposite when the policyholder is a corporation, just as it is inapposite where an individual policyholder resides alone.

**[24] Courts** ☞**89**
106k89 Most Cited Cases

The Supreme Court follows the doctrine of stare decisis and will abandon a previous holding only when it is incumbent upon it to do so.

**[25] Courts** ☞**89**
106k89 Most Cited Cases

The doctrine of stare decisis is designed to provide continuity and predictability in the legal system.

**[26] Courts** ☞**90(1)**
106k90(1) Most Cited Cases

The Supreme Court adheres to stare decisis as a means of thwarting the arbitrary administration of justice as well as providing a clear rule of law by which the citizenry can organize their affairs.

**[27] Courts** ☞**90(1)**
106k90(1) Most Cited Cases

A supreme court not only has the right, but is entrusted with the duty, to examine its former decisions and, when reconciliation is impossible, to discard its former errors.

**[28] Courts** ☞**90(6)**
106k90(6) Most Cited Cases

A prior decision of the Supreme Court may be overruled where (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it.

**[29] Insurance** ☞**2100**
217k2100 Most Cited Cases
Whether someone is insured under an insurance policy should not be interpreted in favor of one who was not a party to the contract.

**[30] Courts** ☞**90(1)**

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849
**(Publication page references are not available for this document.)**

106k90(1) Most Cited Cases

When deciding whether to overrule precedent, the Supreme Court must ask whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations.

**[31] Courts ☜89**
106k89 Most Cited Cases

If overruling a precedent would cause chaos, it should be upheld even if wrongly decided.

**[32] Courts ☜90(6)**
106k90(6) Most Cited Cases

It does no violence to the legal doctrine of stare decisis to right that which is clearly wrong; it serves no valid public purpose to allow incorrect opinions to remain in the body of the law.

**[33] Insurance ☜2660**
217k2660 Most Cited Cases

Absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist (UM/UIM) coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment.

**[34] Insurance ☜2661**
217k2661 Most Cited Cases

Where a policy of insurance designates a corporation as a named insured, the designation of "family members" of the named insured as other insureds does not extend insurance coverage to a family member of an employee of the corporation, unless that employee is also a named insured; overruling *Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.*, 86 Ohio St.3d 557, 715 N.E.2d 1142..

**[35] Insurance ☜2660**
217k2660 Most Cited Cases

**[35] Insurance ☜2661**
217k2661 Most Cited Cases

Passenger was not insured and, therefore, was not entitled to underinsured motorist (UIM) benefits under policies issued to his mother's corporate employer; the passenger's death was unrelated to his mother's employment by the named insured.

**SYLLABUS OF THE COURT**

1. A prior decision of the Supreme Court may be overruled where (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it.

2. Absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

**(Publication page references are not available for this document.)**

scope of employment. (*King v. Nationwide Ins. Co.* [1988], 35 Ohio St.3d 208, 519 N.E.2d 1380, applied; *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.* [1999], 85 Ohio St.3d 660, 710 N.E.2d 1116, limited.)

 3. Where a policy of insurance designates a corporation as a named insured, the designation of "family members" of the named insured as other insureds does not extend insurance coverage to a family member of an employee of the corporation, unless that employee is also a named insured. (*Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.* [1999], 86 Ohio St.3d 557, 715 N.E.2d 1142, overruled.)

 Bashein & Bashein Co., L.P.A., and W. Craig Bashein; Paul W. Flowers Co., L.P.A., and Paul W. Flowers, Cleveland, for appellants.

 Davis & Young, Henry A. Hentemann and Richard M. Garner, Cleveland, for appellee.

 Boyk & Crossmock, L.L.C., and Steven L. Crossmock, Toledo, urging reversal for amicus curiae, the Ohio Academy of Trial Lawyers.


 O'CONNOR, J.

 [1][2][3] {¶ 1} Stare decisis is the bedrock of the American judicial system. Well-reasoned opinions become controlling precedent, thus creating stability and predictability in our legal system. It is only with great solemnity and with the assurance that the newly chosen course for the law is a significant improvement over the current course that we should depart from precedent.

 {¶ 2} Mindful of these principles, we now examine Ohio's law regarding whether uninsured and underinsured motorist insurance issued to a corporation may compensate an individual for a loss that was unrelated to the insured corporation. This examination results in the limitation of *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116, by restricting the application of uninsured and underinsured motorist coverage issued to a corporation to employees only while they are acting within the course and scope of their employment, unless otherwise specifically agreed. It also requires overruling *Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.* (1999), 86 Ohio St.3d 557, 715 N.E.2d 1142.


                                   I

 {¶ 3} Jason Galatis died on September 24, 1994, as a passenger in a vehicle negligently operated by Shawn Butler. Galatis's estate settled its claim against Butler for $75,000 and released him from liability on September 1, 1995. The estate next settled an underinsured motorist claim against Grange Insurance Company, Galatis's parents' insurer, on December 5, 1995.

 {¶ 4} The matter was resurrected on May 8, 2000, when the estate presented claims under the business auto policy and the general liability portion of a commercial insurance policy that Westfield Insurance Company ("Westfield") had issued to Oliver Printing Company, the employer of Galatis's father and uncle.

 {¶ 5} Aetna Casualty and Surety Company ("Aetna") was notified of claims arising from Galatis's death on August 15, 2000. The claims against Aetna were made under a master insurance policy issued to Quagliata's Restaurants, Inc., the employer of Galatis's mother. This policy was in effect at the time of the accident that caused Galatis's death. The estate asserted claims for coverage under the business auto and commercial general liability parts of the combined policy.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849
**(Publication page references are not available for this document.)**

{¶ 6} The trial court ruled that both Westfield insurance policies and both parts of the Aetna policy provided underinsured motorist coverage to certain members of the Galatis family. However, the court also ruled that the estate had destroyed the insurers' subrogation rights and had failed to give prompt notice of the claims, resulting in loss of coverage under the policies.

{¶ 7} All parties appealed. Before the court of appeals issued its opinion, the estate settled with Westfield, removing it from the case. The court of appeals affirmed the judgment in favor of Aetna on the grounds that an endorsement that listed seven specific individuals as insureds precluded the kind of ambiguity found in *Scott-Pontzer* as to who is insured under the uninsured motorist endorsement to the policy.

{¶ 8} The case is before us as a certified conflict.

II

[4] {¶ 9} An insurance policy is a contract. The freedom to contract and the attendant benefits and responsibilities of the parties to a contract are integral to the liberty of the citizenry, so much so that the United States Constitution specifically protects against state encroachment upon contracts. Clause 1, Section 10, Article I, United States Constitution. [FN1] In order to protect the integrity of contracts, the United States Constitution gives the United States Supreme Court the authority to overrule a state supreme court's interpretation of a state statute that infringes upon the right to contract. *Piqua Branch of State Bank of Ohio v. Knoop* (1853), 57 U.S. (16 How.) 369, 14 L.Ed. 977. In *Piqua,* the United States Supreme Court found our interpretation of a bank charter unconstitutional. It wrote, "We have power only to deal with contracts under the tenth section of the first article of the Constitution, whether made by a State or an individual; if such contract be impaired by an act of the State such act is void, as the power is prohibited to the State." Id. at 391, 14 L.Ed. 977.

[5] {¶ 10} The Ohio Constitution also protects the freedom of contract.  "The general assembly shall have no power to pass * * * laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intentions of parties * * * by curing omissions, defects, and errors, in instruments * * *, arising out of their want of conformity with the laws of this state." Section 28, Article II, Ohio Constitution. The Ohio constitutional protection of contracts is coextensive with that of the federal Constitution. See *State ex rel. Horvath v. State Teachers Retirement Bd.* (1998), 83 Ohio St.3d 67, 76, 697 N.E.2d 644.

[6][7][8][9][10] {¶ 11} When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. *Hamilton Ins. Serv. Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898, citing *Employers' Liab. Assur. Corp. v. Roehm* (1919), 99 Ohio St. 343, 124 N.E. 223, syllabus. See, also, Section 28, Article II, Ohio Constitution. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. Id. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. *Gulf Ins. Co. v. Burns Motors, Inc.* (Tex.2000), 22 S.W.3d 417, 423.

[11][12] {¶ 12} On the other hand, where a contract is ambiguous, a court may consider

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849
**(Publication page references are not available for this document.)**

extrinsic evidence to ascertain the parties' intent. *Shifrin v. Forest City Enterprises, Inc.* (1992), 64 Ohio St.3d 635, 597 N.E.2d 499. A court, however, is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties. Id.; *Blosser v. Enderlin* (1925), 113 Ohio St. 121, 148 N.E. 393, paragraph one of the syllabus ("there can be no intendment or implication inconsistent with the express terms [of a written contract]").

[13][14][15] {¶ 13} It is generally the role of the finder of fact to resolve ambiguity. See, e.g., *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 609 N.E.2d 144. However, where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party. *Cent. Realty Co. v. Clutter* (1980), 62 Ohio St.2d 411, 413, 16 O.O.3d 441, 406 N.E.2d 515. In the insurance context, the insurer customarily drafts the contract. Thus, an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus.

[16][17] {¶ 14} There are limitations to the preceding rule. "Although, as a rule, a policy of insurance that is reasonably open to different interpretations will be construed most favorably for the insured, that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy." *Morfoot v. Stake* (1963), 174 Ohio St. 506, 23 O.O.2d 144, 190 N.E.2d 573, paragraph one of the syllabus. Likewise, where "the plaintiff is not a party to [the] contract of insurance * * *, [the plaintiff] is not in a position to urge, as one of the parties, that the contract be construed strictly against the other party." *Cook v. Kozell* (1964), 176 Ohio St. 332, 336, 27 O.O.2d 275, 199 N.E.2d 566. This rings especially true where expanding coverage beyond a policyholder's needs will increase the policyholder's premiums. Id.

A. Uninsured Motorist Coverage

1. The *Scott-Pontzer* Decision

{¶ 15} The insurance industry customarily uses standardized forms promulgated by the Insurance Services Office, Inc. ("ISO"). The ISO forms are generically written to provide for the insurance needs of a wide range of policyholders. Combinations of the various standardized forms are used to create a customized policy for each policyholder. This is accomplished by using base forms such as Commercial Auto, Personal Auto, Personal Umbrella, or Commercial General Liability, which are supplemented by state-specific endorsements that expand or limit the extent of insurance coverage in accordance with the desire of the parties and with each state's laws.

{¶ 16} The ISO identifies the "Ohio Uninsured Motorist Coverage" endorsement as form CA 2133. Form CA 2133 is routinely included in policies issued to individuals, partnerships, corporations, and government entities. This form is part of the Aetna policy sub judice and was at issue in *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116.

{¶ 17} Since *Scott-Pontzer,* this court has been asked to decide a number of cases that center on the term "you" in form CA 2133. Form CA 2133 delineates four classes of "who is an insured" for uninsured motorist coverage. The first class is "you"; however, "you," is not defined in Form CA 2133. Form CA 2133 is merely a modification of the main policy form, in this case "Business Auto Coverage Form" (Form CA 0001), which defines "you" as "the Named Insured shown in the Declarations." The Aetna policy identifies the named insured, i.e., policyholder, as Quagliata's Restaurants, Inc.

{¶ 18} In *Scott-Pontzer,* this court relied upon *King* to find "you" to be ambiguous

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849

**(Publication page references are not available for this document.)**

because it referred to a corporation, which "cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." 85 Ohio St.3d at 664, 710 N.E.2d 1116. This court opined that "naming the corporation as the insured is meaningless unless the coverage extends to some person or persons--including to the corporation's employees." Id. This court stated, "[L]anguage in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer. Accordingly, we conclude that Pontzer, at the time of his death, was an insured under the * * * policy for purposes of underinsured motorist coverage." Id. at 665, 710 N.E.2d 1116 (internal citation and quotation omitted).

2. Other Jurisdictions and *Scott-Pontzer*

{¶ 19} Our reasoning in *Scott-Pontzer* has been questioned. See, e.g., *Seaco Ins. Co. v. Davis-Irish* (C.A.1, 2002), 300 F.3d 84, 87 (labeling *Scott-Pontzer* as anomalous for consciously departing from the tenet that the intent of the parties controls the interpretation of a contract); *Gibson v. New Hampshire Ins. Co.* (S.D.Ohio 2001), 178 F.Supp.2d 921, 922, fn. 2, 3 (referring to *Scott-Pontzer*'s reasoning as a "mystery" and its conclusion as "preposterous"); *Szabo v. CGU Internatl. Ins., PLC* (S.D.Ohio 2002), 227 F.Supp.2d 820, 830, 833-834, fn. 15 (citing "distracting internal inconsistencies" in *Scott-Pontzer* and classifying portions of it as "beguiling"); *Lawler v. Fireman's Fund Ins. Co.* (N.D.Ohio 2001), 163 F.Supp.2d 841, 842, 843 (strongly disagreeing with *Scott-Pontzer* and referring to the resulting "mess" and to the Ohio Supreme Court's "distortion" of the law). Further, the *Scott-Pontzer* rationale stands in stark contrast with decisions of the vast majority of states that have considered similar issues. See, e.g., *Concrete Services, Inc. v. United States Fid. & Guar. Co.* (1998), 331 S.C. 506, 498 S.E.2d 865; *Grain Dealers Mut. Ins. Co. v. McKee* (Tex.1997), 943 S.W.2d 455; *Buckner v. Motor Vehicle Acc. Indemn. Corp.* (1985), 66 N.Y.2d 211, 495 N.Y.S.2d 952, 486 N.E.2d 810; *Foote v. Royal Ins. Co. of Am.* (1998), 88 Hawaii 122, 962 P.2d 1004; *Am. States Ins. Co. v. C & G Contracting, Inc.* (1996), 186 Ariz. 421, 924 P.2d 111; *Michigan Twp. Participating Plan v. Pavolich* (1998), 232 Mich.App. 378, 591 N.W.2d 325; *Younger v. Reliance Ins. Co.* (Tenn.App.1993), 884 S.W.2d 453. Although not controlling, this broad-based disagreement with and criticism of *Scott- Pontzer* supports our decision to revisit the subject.

3. The Intention of the Parties to the Contract

[18] {¶ 20} The general intent of a motor vehicle insurance policy issued to a corporation is to insure the corporation as a legal entity against liability arising from the use of motor vehicles. *King v. Nationwide Ins. Co.*, 35 Ohio St.3d at 211, 519 N.E.2d 1380. It is settled law in Ohio that a motor vehicle operated by an employee of a corporation in the course and scope of employment is operated by and for the corporation and that an employee, under such circumstances, might reasonably be entitled to uninsured motorist coverage under a motor vehicle insurance policy issued to his employer. Id. at 213, 519 N.E.2d 1380. See, also, *Selander v. Erie Ins. Group* (1999), 85 Ohio St.3d 541, 709 N.E.2d 1161. However, an employee's activities outside the scope of employment are not of any direct consequence to the employer as a legal entity. An employer does not risk legal or financial liability from an employee's operation of a non-business-owned motor vehicle outside the scope of employment. Consequently, uninsured motorist coverage for an employee outside the scope of employment is extraneous to the general intent of a commercial auto policy.

{¶ 21} Nevertheless, in *Scott-Pontzer,* this court held that an uninsured motorist endorsement that identifies "you" as the named insured where "you" refers to a corporation must extend coverage to an employee outside the course and scope of employment. Soon thereafter, this court expanded upon *Scott- Pontzer* by holding that the same policy form also provides uninsured motorist coverage to a resident relative of an employee of a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849
**(Publication page references are not available for this document.)**

corporate policyholder. *Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.* (1999), 86 Ohio St.3d 557, 715 N.E.2d 1142.

{¶ 22} Throughout this process, this court did not reconcile construing the contractual language to provide insurance to off-duty employees, and to the family members of those employees, with the absence of any benefit to the policyholder, i.e., the corporation. In due course, we will turn to these questions. First, we examine the purported ambiguity.

4. Ambiguity and the Corporate Entity

{¶ 23} The UM/UIM endorsement language before us is:

{¶ 24} "B. WHO IS AN INSURED"

{¶ 25} "1. You.

{¶ 26} "2. If you are an individual, any 'family member.'

{¶ 27} "3. Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.' The covered 'auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.

{¶ 28} "4. Anyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured.' "

{¶ 29} The first class of who is insured--"you"--readily applies where the policyholder is an individual. Its application is ambiguous where the policyholder is a corporation. *King v. Nationwide*, 35 Ohio St.3d 208, 519 N.E.2d 1380. In *King*, we analyzed an earlier version of the Ohio Uninsured Motorist Endorsement that contained a different formulation of who is an insured. *King* held that a motor vehicle operated by an employee in the scope of his employment was operated by and for the corporation, thereby equating the employee to the corporation for the purpose of work-related activities and injuries. Id. at 213, 519 N.E.2d 1380. We then held that because the employee occupied the vehicle operated by the corporation, the employee was within the class of " 'anyone else' * * * occupying * * * any other motor vehicle while it is being operated by you." Id.

{¶ 30} Our reasoning in *King* took an unnecessary step. We found coverage for the employee as an occupant of the vehicle that was operated by the corporation. However, the vehicle was operated by the corporation *through* the very employee we found to be "anyone else." Although this logic is valid, it is tenuous to classify an individual as both "you" and "anyone else" at the same instant.

[19] {¶ 31} The employee in *King* acted on behalf of the corporation while operating the vehicle. This is why we found the employee to be "you." Further analysis was unnecessary. Because the employee qualifies as "you" while operating a motor vehicle *on behalf of* the corporation, he is entitled to uninsured motorist coverage. Accordingly, we follow *Scott-Pontzer* to the extent that it held that an employee in the scope of employment qualifies as "you" as used in CA 2133, and thus, is entitled to uninsured motorist coverage.

{¶ 32} We cannot, however, extend this coverage to an employee outside the scope of employment. As previously discussed, *King* found that an employee was insured for uninsured motorist coverage as an occupant of a vehicle operated by the corporation where the employee was within the scope of employment. The *Scott-Pontzer* court properly focused on the term "you," but in so doing confused the employee's status as an individual with the employee's status as an agent of the corporation. The court held that where "you" is

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849
**(Publication page references are not available for this document.)**

defined as a corporation for the purposes of insuring against bodily injury sustained by "you," the term must be read to extend insurance coverage to each employee regardless of whether he was acting within the course and scope of employment. In this manner, *Scott-Pontzer* dramatically departed from *King*'s sound rationale that an employee qualifies as "you" under a policy issued to a corporation only when within the scope of employment.

{¶ 33} In *Scott-Pontzer,* this court reasoned that "naming the corporation as the insured is meaningless unless the coverage extends to some person or persons--including to the corporation's employees." 85 Ohio St.3d at 664, 710 N.E.2d 1116. However, this statement does not support the untenable extension of insured status to employees outside the scope of employment.

5. Construing Ambiguity in Favor of the Policyholder

{¶ 34} As discussed above, contract law requires that, where parties to a contract have unequal bargaining power, ambiguities be construed in favor of the nondrafting party. In the insurance context, we have assumed that the insurer, as the drafter of the policy, is always in a stronger bargaining position than is the insured. Thus, ambiguities are construed in favor of the insured. A claimant, however, is not necessarily an insured.

[20][21][22] {¶ 35} An insured can be the policyholder or another who is entitled to insurance coverage under the terms of the policy. When a court decides whether a claimant is insured under a policy, ambiguities are construed in favor of the *policyholder,* not the claimant. *Cook* v. *Kozell,* supra; *West* v. *McNamara* (1953), 159 Ohio St. 187, 197, 50 O.O. 229, 111 N.E.2d 909 ("The universal rule that insurance policies are to be construed strictly in favor of the insured operates in favor of such insured persons as are covered by the policy, and * * * is not applicable to extend the coverage of the policy to absurd lengths so as to provide a right of action * * *"). In *Scott- Pontzer,* we failed to analyze how ruling that an employee is insured outside the course and scope of employment favors the policyholder. Rather, we asked which construction favored the claimant. While an ambiguity is construed in favor of one who has been determined to be insured, an ambiguity in the preliminary question of whether a claimant is insured is construed in favor of the policyholder. Id. Accord *Inland Rivers Serv. Corp. v. Hartford Fire Ins. Co.* (1981), 66 Ohio St.2d 32, 34, 20 O.O.3d 20, 418 N.E.2d 1381 ("It is undisputed that one seeking to recover on an insurance policy generally has the burden of * * * demonstrating coverage under the policy"). If the policyholder's interest is not considered at this initial phase, we risk construing the policy against the policyholder. *Grant Thornton v. Windsor House, Inc.* (1991), 57 Ohio St.3d 158, 161, 566 N.E.2d 1220 ("Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio"). *Scott-Pontzer* concluded otherwise.

{¶ 36} In resolving this alleged ambiguity, the proper question is whether interpreting the policy to cover all employees of the policyholder, regardless of whether the employee is acting within the course and scope of employment-- and all family members of the employees--favors the *policyholder.*

{¶ 37} The purpose of a commercial auto policy is to protect the policyholder. *King v. Nationwide Ins. Co.*, supra. Providing uninsured motorist coverage to employees who are not at work or, for that matter, to every employee's family members is detrimental to the policyholder's interests. See *Cook v. Kozell,* 176 Ohio St. at 336, 27 O.O.2d 275, 199 N.E.2d 566.

{¶ 38} *King* held that the use of a vehicle "by and for" the corporate policyholder precipitated coverage. This holding is reasonable because it arguably benefits the policyholder to insure against losses sustained by those operating vehicles on its behalf. This point was lost in *Scott-Pontzer,* which did not focus upon the critical inquiry of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2003 WL 22681833
100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849
(Publication page references are not available for this document.)

whether the loss occurred within the scope of employment--a necessary factor for the establishment of insurance coverage in *King*.

{¶ 39} *Scott-Pontzer* ignored the intent of the parties to the contract. Absent contractual language to the contrary, it is doubtful that either an insurer or a corporate policyholder ever conceived of contracting for coverage for off-duty employees occupying noncovered autos, let alone the family members of the employees. The *Scott-Pontzer* court construed the contract in favor of neither party to the contract, preferring instead to favor an unintended third party. The *Scott-Pontzer* court even acknowledged that the expansion of coverage for an employee outside the course and scope of employment "may be viewed by some as a result that was not intended by the parties to the insurance contracts at issue." 85 Ohio St.3d at 666, 710 N.E.2d 1116. The United States Supreme Court has not shied away from overturning state court decisions that unreasonably contort a contract. *Piqua*, 57 U.S. (16 How.) at 391-392, 14 L.Ed. 977 ("The decision of the Supreme Court of the State [of Ohio] is before us for revision, and if their construction of the contract in question impairs its obligation, we are required to reverse their judgment. To follow the construction of a State court in such a case, would be to surrender one of the most important provisions in the federal Constitution"). See, also, *Allied Structural Steel Co. v. Spannaus* (1978), 438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d 727 (the sovereignty of a state "has limits when its exercise effects substantial modifications of private contracts" [internal quotations and citations omitted] ).

B. Insurance Coverage for Family Members

{¶ 40} In *Ezawa,* we relied upon the *Scott-Pontzer* definition of "you" to find that the second class of insureds on Form CA 2133--"if you are an individual, any family member"--extends uninsured motorist coverage to a family member of an employee. In addition to relying upon the logic of *Scott- Pontzer, Ezawa* also erred by not interpreting the second class of insureds as a nullity. Insurance policies are no longer written in manuscript for each policyholder, but rather are standard forms designed to insure a variety of entities, including individuals. "There is nothing sinister about an insurer's use of a 'one size fits all' policy form." *Seaco Ins. Co. v. Davis-Irish*, 300 F.3d at 87.

[23] {¶ 41} The second class of insureds applies when the policyholder is an individual. It is simply inapposite when the policyholder is a corporation, just as it is inapposite where an individual policyholder resides alone, and as the fourth class is inapposite where no one is entitled to recover for another's bodily injury. One who argues a contorted use of an inapposite section of a standard form "confuses superfluity with inapplicability." Id. It is unnecessary for each of the four classifications to apply to every insurance policy as long as the parties to the insurance policy agree upon whether a particular claimant is intended to be insured. [FN2]

[24] {¶ 42} In hindsight we see the problems inherent in our earlier opinions. This court, however, follows the doctrine of stare decisis and will abandon a previous holding only when it is incumbent upon us to do so.

III

[25][26][27] {¶ 43} The doctrine of stare decisis is designed to provide continuity and predictability in our legal system. We adhere to stare decisis as a means of thwarting the arbitrary administration of justice as well as providing a clear rule of law by which the citizenry can organize their affairs. *Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St.3d 1, 4- 5, 539 N.E.2d 103. Those affected by the law come to rely upon its consistency. *Helvering v. Hallock* (1940), 309 U.S. 106, 119, 60 S.Ct. 444, 84 L.Ed. 604. Accordingly, stare decisis is long revered. See, e.g., 1 Blackstone, Commentaries on the Laws of England (1765) 70 ("precedents and rules must be followed, unless flatly absurd or

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849
**(Publication page references are not available for this document.)**

unjust * * *"). However, a supreme court not only has the right, but is entrusted with the duty to examine its former decisions and, when reconciliation is impossible, to discard its former errors. *State v. Jenkins* (2000), 93 Hawaii 87, 112, 997 P.2d 13; see, also, *Mitchell v. W.T. Grant Co.* (1974), 416 U.S. 600, 627-628, 94 S.Ct. 1895, 40 L.Ed.2d 406.

{¶ 44} "[T]he doctrine of stare decisis is of fundamental importance to the rule of law. Like the United States Supreme Court, we recognize that our precedents are not sacrosanct, for we have overruled prior decisions where the necessity and propriety of doing so has been established. But any departure from the doctrine of stare decisis demands special justification." *Wampler v. Higgins* (2001), 93 Ohio St.3d 111, 120, 752 N.E.2d 962 (Internal citations and quotations omitted). This principle is universally accepted and unquestioned. Reasonable disagreement may arise only over which circumstances constitute "special justification."

{¶ 45} Although this court is no stranger to overruling precedent, [FN3] we have not adopted a standard by which to judge whether a past decision should be abandoned. Justice Frankfurter opined that stare decisis should be abandoned only "when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience." *Helvering v. Hallock*, 309 U.S. at 119, 60 S.Ct. 444, 84 L.Ed. 604. Justice Scalia takes a pragmatic approach, believing that a precedent should be abandoned when the rule is "wrong in principle," "unstable in application," and undermined by various exceptions and contradictions. *United States v. Dixon* (1993), 509 U.S. 688, 709-711, 113 S.Ct. 2849, 125 L.Ed.2d 556.

{¶ 46} Other state supreme courts have opined as to when stare decisis should be abandoned. [FN4] Under any of these standards, *Scott-Pontzer* would be justly overturned.

{¶ 47} The Supreme Court of Michigan has formulated a standard that incorporates factors used by other states: (1) whether the decision was wrongly decided, (2) whether the decision defies practical workability, (3) whether reliance interests would cause an undue hardship, and (4) whether changes in the law or facts no longer justify the questioned decision. *Pohutski v. Allen Park* (2002), 465 Mich. 675, 694, 641 N.W.2d 219. The Michigan court created a well-structured method of ensuring a disciplined approach to deciding whether to abandon a precedent. Accordingly, we adopt a modified version of it here.

[28] {¶ 48} The first and fourth Michigan factors operate as alternatives-- a decision either must have been wrong at the time it was decided, or was initially correct, but the passage of time has rendered it obsolete. Thus, in Ohio, a prior decision of the Supreme Court may be overruled where (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it. [FN5] We now apply this test to *Scott-Pontzer*.

A. *Scott-Pontzer* was Erroneously Decided

[29] {¶ 49} As previously discussed, *Scott-Pontzer* was wrongly decided. See Section II, above. Whether someone is insured under an insurance policy should not be interpreted in favor of one who was not a party to the contract. This was the law in Ohio long before *Scott-Pontzer*. *Cook v. Kozell*, 176 Ohio St. at 336, 27 O.O.2d 275, 199 N.E.2d 566 (the plaintiff who is not a party to the insurance contract is not in a position to urge a construction of the contract that would be detrimental to both parties to the contract); *West v. McNamara*, supra. We should have followed this well- settled and intrinsically sound precedent, which is verified by experience. Instead, we ventured to a point where the definition of "you" became immaterial to its meaning and the intention of the parties was ignored.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2003 WL 22669833
100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849
(Publication page references are not available for this document.)

B. The Unworkable Nature of *Scott-Pontzer*

1. *Scott-Pontzer* Has Caused Chaos in the Courts

{¶ 50} *Scott-Pontzer* and its progeny defy practical workability. The multitude of post-*Scott-Pontzer* issues before this court, [FN6] the widespread criticism of the decision from other jurisdictions, [FN7] and the numerous conflicts emanating from the lower courts [FN8] indicate that the decision muddied the waters of insurance coverage litigation, converted simple liability suits into complex multiparty litigation, and created massive and widespread confusion--the antithesis of what a decision of this court should do. Attorneys are forced to file briefs and appendixes that are several inches thick in an attempt to form a coherent picture out of the post-*Scott-Pontzer* morass.

{¶ 51} This chaos resulted from this court's failure to explain why the intent of the parties was not controlling. The *Scott-Pontzer* court also failed to acknowledge or explain its departure from precedent. To uphold *Scott-Pontzer* is to summarily reject the well-reasoned precedents of *Cook* and *West*. This we must not do.

2. Exceptions and Contradictions to *Scott-Pontzer*.

{¶ 52} As previously discussed, the courts of Ohio are deluged by cases arising from *Scott-Pontzer* and its progeny. If we allow the objectionable aspects of *Scott-Pontzer* to stand, a patchwork of exceptions to, and limitations of, *Scott-Pontzer* would be the likely result.

{¶ 53} The case before us asks whether the addition of an endorsement entitled "Drive Other Car Coverage--Broadened Coverage for Named Individuals" to the commercial motor vehicle policy prevents the *Scott-Pontzer* ambiguity from being read into the policy. A broadened-coverage endorsement extends a commercial motor vehicle insurance policy's coverage to a list of specific individuals when those individuals or their spouses use vehicles not otherwise covered under the policy.

{¶ 54} The broadened-coverage endorsement can be seen as altering the *Scott-Pontzer* analysis in two ways. First, Aetna argues that the inclusion of these individuals prevents any ambiguity from forming because "you" must be read to mean the specific individuals listed in the broadened-coverage endorsement. Thus, because there is uninsured motorist coverage provided for individuals, the term "you" is not rendered ambiguous. Second, Aetna invokes expressio unius to argue that by expressly covering the individuals listed in the broadened-coverage endorsement, the contract shows that the parties did not intend to extend uninsured motorist coverage to every employee and employee's family member.

{¶ 55} Aetna's second argument carries great weight, for the intent of the parties is paramount. Here, Quagliata's Restaurants paid $881 to have seven individuals covered under the broadened-coverage endorsement. Of that amount, $565 was for uninsured motorist premiums. It is clear that the parties thought this to be an expansion of uninsured motorist coverage. However, ruling that including individuals on a broadened-coverage endorsement prevents "you" from being ambiguous would not be without its problems. That ruling would require that paying an additional premium actually reduces the coverage available under the policy. This is neither a just result nor a logical consistency.

{¶ 56} Besides the broadened-coverage issue presented in this case, additional exceptions to *Scott-Pontzer* are sought in cases currently pending before this court. [FN9] Creating exceptions to *Scott-Pontzer* would add to the confusion and arbitrariness, not lessen them.

{¶ 57} The rationale of *Scott-Pontzer* does not withstand scrutiny. If we were to slowly create a patchwork of exceptions and limitations, we would abandon certainty in the law

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2003 WL 22681853
100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849
**(Publication page references are not available for this document.)**

and contribute to the continuing morass of litigation. Maintaining *Scott-Pontzer* as precedent, while eviscerating it with exceptions, would not respect the principle of stare decisis but mock it, and would continue the chaos in our insurance jurisprudence. See *United States v. Dixon* at 711, 113 S.Ct. 2849, 125 L.Ed.2d 556.

C. Reliance Interests

[30][31] {¶ 58} The final part of our test is whether undue hardship would be visited upon those who have relied on *Scott-Pontzer*. "[T]he Court must ask whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations." *Robinson v. Detroit* (2000), 462 Mich. 439, 466, 613 N.W.2d 307. If overruling a precedent would cause chaos, it should be upheld even if wrongly decided.

{¶ 59} No reliance interest will be jeopardized by limiting *Scott-Pontzer*. First, *Scott-Pontzer* cannot be relied upon when policyholders purchase uninsured motorist coverage. The General Assembly has enacted changes to R.C. 3937.18 expressly to supersede *Scott-Pontzer*. Section 3, 2001 Am.Sub.S.B. No. 97 (eff. Oct. 31, 2001). Second, the overwhelming majority of *Scott-Pontzer* cases are resurrected claims from the years prior to the *Scott-Pontzer* decision. [FN10] Because no one was aware of this form of uninsured motorist coverage before it was created by that decision, no one could have relied upon it. Finally, the potential that anyone would have reduced his personal uninsured motorist coverage based upon the belief that his employer's insurer, or his family member's employer's insurer, would provide this coverage is practically nonexistent. Thus, there is no individual or societal reliance upon *Scott-Pontzer* outside of the courtroom.

[32] {¶ 60} Limiting *Scott-Pontzer* will restore order to our legal system by returning to the fundamental principles of insurance contract interpretation. "It does no violence to the legal doctrine of *stare decisis* to right that which is clearly wrong. It serves no valid public purpose to allow incorrect opinions to remain in the body of our law." *State ex rel. Lake Cty. Bd. of Commrs. v. Zupancic* (1991), 62 Ohio St.3d 297, 300, 581 N.E.2d 1086.

IV

{¶ 61} For the foregoing reasons, we hereby limit *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.* to apply only where an employee is within the course and scope of employment. We overrule *Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.* "Since neither experience nor reason and justice support the rule[s], but in fact militate against [them], this court would be doing less than its duty, even giving due and careful consideration to the rule of *stare decisis,* to perpetuate [them] or add yet another ramification or exception." *Carter- Jones Lumber Co. v. Eblen* (1958), 167 Ohio St. 189, 207, 4 O.O.2d 256, 147 N.E.2d 486.

[33][34] {¶ 62} Absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment. Additionally, where a policy of insurance designates a corporation as a named insured, the designation of "family members" of the named insured as "other insureds" does not extend insurance coverage to a family member of an employee of the corporation, unless that employee is also a named insured.

[35] {¶ 63} In this case, Jason Galatis's death was unrelated to his mother's employment with Quagliata's Restaurants. Therefore, the Aetna insurance policy issued to Quagliata's Restaurants does not provide coverage here. Accordingly, the judgment of the court of appeals is affirmed.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849
**(Publication page references are not available for this document.)**

Judgment affirmed.

MOYER, C.J., DeGENARO and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., and LUNDBERG STRATTON, J., concur separately.

RESNICK, J., dissents.

RESNICK and FRANCIS E. SWEENEY, SR., JJ., dissent.

PFEIFER, J., dissents.

MARY DeGENARO, J., of the Seventh Appellate District, sitting for COOK, J.


MOYER, C.J., concurring.

{¶ 64} This court has recently accepted jurisdiction over several cases, including the one at bar, in which a party has affirmatively requested that we overrule *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116. Having accepted this issue for review, [FN11] the court today stands at a crossroads. The court may follow the doctrine of stare decisis and attempt to minimize the impact of *Scott-Pontzer* by creating a patchwork of exceptions to and limitations of the holding therein. Alternatively, the court may depart from a rigid application of the doctrine and, in a single pronouncement, right that which is clearly wrong. See *State ex rel. Lake Cty. Bd. of Commrs. v. Zupancic* (1991), 62 Ohio St.3d 297, 300, 581 N.E.2d 1086. For the reasons stated in the majority opinion, I believe that the latter charts the better course toward restoring order to insurance law in Ohio.

{¶ 65} As a staunch and consistent advocate of stare decisis, I concur in the majority opinion only after considerable deliberation. I joined Justice Cook's dissent in *Scott-Pontzer* because I believed that neither the commercial policy nor the excess policy should be construed to provide UIM coverage to an off-duty employee driving his spouse's car. Under most circumstances, I would not vote to overrule a precedent established by the majority of this court. The doctrine of stare decisis, as I observed in *Gallimore v. Children's Hosp. Med. Ctr.* (1993), 67 Ohio St.3d 244, 257, 617 N.E.2d 1052, embodies "a fundamental element of American jurisprudence--consistency and predictability." (Moyer, C.J., dissenting.) My dissent in *Gallimore,* however, also recognized that " '*stare decisis* is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience.' " Id., quoting *Helvering v. Hallock* (1940), 309 U.S. 106, 119, 60 S.Ct. 444, 84 L.Ed. 604.

{¶ 66} The majority opinion refines this principle and, in so doing, sets forth a tripartite standard that honors stare decisis by preventing arbitrary and discriminatory enforcement of the law while relieving courts of the obligation to apply stare decisis with "petrifying rigidity." *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 438, 628 N.E.2d 46. We serve the bench and the bar by adopting a cogent, clear standard by which to test claims that our precedents should not be followed. There can be little doubt that *Scott-Pontzer* should be limited under this standard.

{¶ 67} Our decision today does not mark a change in my belief in the importance of the predictability and consistency produced by stare decisis. No one should assume that our decision heralds a new era in which prior cases of this court will be routinely or arbitrarily overruled. Our decision, rather, is a narrow response to a decision widely recognized as an error of law, which, if left uncorrected, would have continued to produce

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2003 WL 22681833

100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849

**(Publication page references are not available for this document.)**

consequences that even the majority in *Scott-Pontzer* could not have foreseen. To that end, I am reminded of this court's assertion over four decades ago:

{¶ 68} " '[C]ases and situations arise in which the need for a change is imminent. This becomes acutely apparent when a rule with dubious beginnings hangs on tenaciously in the face of a much needed change. Case after case will display the death throes of the old rule and at the same time the reluctance of the judges to overrule it.' " *Gibbon v. Young Women's Christian Assn. of Hamilton* (1960), 170 Ohio St. 280, 289, 10 O.O.2d 334, 164 N.E.2d 563, quoting Feather, The Immunity of Charitable Institutions from Tort Liability (1959), 11 Baylor L.Rev. 86, 106.

{¶ 69} This observation could be no more prophetic than here: case after case before us reveals the impracticality of *Scott-Pontzer* and thus gives rise to the question of whether the reluctance of judges to overrule it will prevail in the face of a much needed change. I join the majority today as we create and apply a standard that will serve this court and all who are bound by its decision.

LUNDBERG STRATTON, J., concurs in the foregoing concurring opinion.

ALICE ROBIE RESNICK, J., dissenting.

{¶ 70} This case comes to us through a certified conflict on the following issue, as stated by the court of appeals: "Whether the inclusion of a 'Broadened Coverage Endorsement,' adding individual named insureds to a commercial motor vehicle liability policy, eliminates any ambiguity over the use of the term 'you' therein." The court of appeals certified its decision on this issue as in conflict with the decisions of the Fifth District Court of Appeals in *Burkhart v. CNA Ins. Co.* (Feb. 25, 2002), Stark App. No. 2001CA00265, 2002 WL 316224; and *Still v. Indiana Ins. Co.* (Feb. 25, 2002), Stark App. No. 2001CA00300, 2002 WL 358652. This court determined that a conflict exists and ordered the parties to brief the issue as stated. 96 Ohio St.3d 1446, 2002-Ohio-3512, 771 N.E.2d 260. When the court accepts a certified-conflict case for review, it issues an order "identifying those issues raised in the case that will be considered by the Supreme Court on appeal." S.Ct.Prac.R. IV(2)(C). Our order identified only the issue stated in the certification order.

{¶ 71} Rather than confining itself to deciding the certified issue, the majority expands the scope of this appeal on the merits by drastically "limiting" the holding of *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116, and overruling *Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.* (1999), 86 Ohio St.3d 557, 715 N.E.2d 1142. In the process of reaching those conclusions, the majority expands the reach of its opinion to yet another level by propounding as syllabus law a general, supposedly objective, test to be applied whenever this court considers whether stare decisis should be rejected and a previous decision of this court overruled.

{¶ 72} Appellee conceded the validity of *Scott-Pontzer* in both the trial court and the court of appeals below, and proceeded at both levels on the theory that it should prevail on other grounds. The trial court found that *Scott-Pontzer* applied but further found that coverage pursuant to that decision was unavailable because appellants failed to comply with notice and subrogation provisions in the insurance policy. Appellants appealed from that decision, and Aetna cross-appealed. As one of its points, Aetna argued that the policy at issue in this case differs from the policy at issue in *Scott- Pontzer* because the broadened-coverage endorsement in the Aetna policy removes the ambiguity over the word "you" and therefore distinguishes this case from *Scott-Pontzer*. This argument had been raised by Aetna in the trial court, but by ruling that coverage was potentially available under *Scott-Pontzer,* the trial court obviously did not accept Aetna's argument. Notably,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2003 WL 22669855
100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849
**(Publication page references are not available for this document.)**

appellee never raised any argument in the court of appeals challenging the rationale underlying *Scott-Pontzer*. The court of appeals affirmed the trial court's judgment solely on the broadened-coverage-endorsement grounds urged by Aetna. The court of appeals then certified a conflict on that issue to this court for review.

{¶ 73} In its brief filed here, appellee uses seven pages of its brief to respond to appellants' arguments relating to the impact of the broadened- coverage endorsement. Appellee then expounds for 28 pages on why *Scott- Pontzer* should be overruled, going to great lengths to argue a position that was never raised below and that was not in any way responsive to appellants' brief on the merits. Appellee's position is inconsistent with all of its arguments below premised on an acceptance of *Scott-Pontzer* and could not have been anticipated by appellants. Under S.Ct.Prac.R. VI(4)(A), appellants were allowed only 20 pages for their reply brief, which ordinarily should be enough to counter the points in a typical appellee brief, but which were not nearly enough to reply to this ambush.

{¶ 74} Given all of the above considerations, this case is not the appropriate vehicle for the majority to accomplish its goals. This case is about broadened- coverage endorsements and nothing more. As a certified-conflict case that should be confined to a narrow issue, it is certainly *not* about whether *Scott-Pontzer* should have continuing validity. Because the majority's reach exceeds the limits inherent in this appeal, I dissent.

FRANCIS E. SWEENEY, SR., J., dissenting.

{¶ 75} Today the majority considers extraneous arguments to reach a result more palatable to them than the existing law. In so doing, they ignore our rules of practice and well-established precedents and unnecessarily modify stare decisis, a long-standing principle of American jurisprudence. For these reasons, I dissent.

{¶ 76} First, this case comes before us as a certified question. The Supreme Court Rule of Practice governing this procedure, S.Ct.R.Prac. IV 3(B), provides: "In their merit briefs, the parties shall brief the issues identified in the order of the Supreme Court as issues to be considered on appeal." The case was certified to settle a disagreement among the appellate districts on the effects of the broadened-coverage endorsement in a UIM/UM insurance provision. While Aetna gives lip service to the certified issue, the main thrust of its brief is to convince the court to overrule and limit established case law on different issues. These issues are not properly before the court, and, therefore, the majority should not decide them.

{¶ 77} Not only were these issues not properly certified, none of the arguments on them was raised by Aetna during summary judgment proceedings or during its appeal to the Ninth District Court of Appeals. Aetna did not challenge the viability of *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116; or *Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.* (1999), 86 Ohio St.3d 557, 715 N.E.2d 1142, until after the case was certified and after it appeared that the composition of this court would change. We have always held that issues not raised below are waived. *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 121, 679 N.E.2d 1099. The majority ignores this well-established principle.

{¶ 78} Moreover, in deciding to reexamine *Scott-Pontzer,* the majority fails to abide by the long-standing rule of stare decisis. Stare decisis is the policy that a court follow its past decisions. The significance of this rule cannot be overstated. Without it, litigants may try to challenge precedent every time there is a change in the composition of the court. If this is allowed, issues will never be resolved as long as one side believes that a new court will save the day in another case.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849

**(Publication page references are not available for this document.)**

{¶ 79} In *State ex rel. Allison v. Jones* (1960), 170 Ohio St. 323, 10 O.O.2d 417, 164 N.E.2d 417, a new justice was faced with the chance to overrule a recent decision by the old court. In refusing to do so, he had this to say:

{¶ 80} "On another occasion, each of my six colleagues was privileged to consider a situation identical to that here presented and to arrive at his individual conclusion unfettered by established and existing law. Alone of the seven members of this court, I have not had the opportunity of passing upon the issue * * * without the restriction of a controlling decision of this court directly in point. Exercising judgment in the enviable aura of unrestricted choice, three of my colleagues chose each of the two divergent courses * * *, and each now adheres to his position as adopted. I enjoy no such freedom of choice and consider myself bound to follow what has now been established as the law of this state. Whether I find the result to be palatable is of concern only to myself." Id. at 324, 10 O.O.2d 417, 164 N.E.2d 417 (Peck, J., concurring).

{¶ 81} Justice Peck further recognized:

{¶ 82} "Such a change in the pronounced law can only result from an abandonment of a doctrine which may well be considered the heart and core of Anglo-Saxon jurisprudence. That doctrine is referred to as *stare decisis,* a phrase which is an abbreviation of a maxim adjuring the courts 'to stand by precedent, and not to disturb settled points.' " Id. at 325, 10 O.O.2d 417, 164 N.E.2d 417, quoting *Ballard Cty. v. Kentucky Cty. Debt Comm*. (1942), 290 Ky. 770, 772-773, 162 S.W.2d 771.

{¶ 83} I quote Justice Peck because he was faced with precisely the same situation that faces this new court, but he chose a different outcome because he felt duty-bound to follow established case law. His guidance, in the name of stare decisis, should be heeded.

{¶ 84} Adherence to precedent has several laudatory goals, including certainty, equality, efficiency, and the appearance of justice. Padden, Note, Overruling Decisions in the Supreme Court: The Role of a Decision's Vote, Age, and Subject Matter in the Application of Stare Decisis After *Payne v. Tennessee* (1994), 82 Geo.L.J. 1689. The goal of certainty is promoted "by allowing individuals to arrange their affairs with confidence, assured in the knowledge that the law that will be applied to them in the future will be the same as currently applied." Id. at 1691. Equality is accomplished "by treating like cases alike." Id. at 1692. Efficiency is promoted because "[o]nce a previous court has addressed difficult policy questions, subsequent courts need not expend time and resources to readdress those issues, but can rely on the wisdom of the previous court." Id. The last reason is the appearance of justice. This goal "conforms to the public's notion that Supreme Court Justices should be making impartial rules of law and not * * * law based on personal biases." Id. at 1693.

{¶ 85} Traditionally, courts have accepted three circumstances under which it is proper to overrule precedent: "when there has been an intervening development of law, when the rule it promulgated has proved unworkable, or when its underlying reasoning is outdated or inconsistent with contemporary values." Id. at 1694. Although these reasons have withstood the test of time, the majority feels compelled to craft new rationale in syllabus law. This is done despite the long-held view that any discussion of stare decisis is dicta. Id. at 1690, fn. 6. "Dicta" is defined as "[e]xpressions in court's opinions which go beyond the facts before court and therefore are * * * not binding in subsequent cases as legal precedent." Black's Law Dictionary (6th Ed.1990) 454.

{¶ 86} I am especially troubled by the first and third reasons espoused by the majority in the syllabus. As to the first reason (that the prior decision was wrongly decided), I ask, Who decides whether a decision was wrongly decided? In *Scott-Pontzer,* we were examining specific UIM policy language that had not previously been examined by the court.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849
**(Publication page references are not available for this document.)**

In reaching our decision, we did not overrule any prior decision. In fact, we followed the established law that when ambiguous policies permit more than one reasonable interpretation, the one that favors the insured must prevail. This time-tested principle encourages precise policy language, protects insureds who rely upon their reasonable understanding of the policies, and precludes insurers from profiting from their sloppy draftsmanship. If our interpretations in these cases contravened the intent of the insurance companies, it was the obligation of the insurance companies to rewrite their policies. Indeed, this is what happened after *Scott-Pontzer.* In response to the ambiguities, insurance companies rewrote their contracts to better describe the scope of coverage provided. See majority opinion, fn. 10.

{¶ 87} Perhaps even more troubling is the third new ground for overruling precedent (that overruling will not impose an undue hardship for those who have relied upon the decision). How can this factor be met here? Even the majority concedes that many pending cases raise *Scott-Pontzer* issues. These cases involve individual litigants who have devoted much time and money in pursuing their claims. Therefore, how can the majority even suggest that no undue hardship is created by this decision?

{¶ 88} Thus, even though recent cases are not immune to being overruled, a change in court composition is not a sufficient reason for abandoning precedent. Padden, Overruling Decisions, supra, 82 Geo.L.J. at 1719. Instead, I believe that the majority should recognize that prior rulings of this court are still valid and binding even after a member of the majority has left the bench.

{¶ 89} Moreover, I believe that the majority commits error in adopting new rationale for overruling precedent. There is no reason to abandon the time-tested principles for applying stare decisis.

{¶ 90} For all these reasons, I dissent.

RESNICK, J., concurs in the foregoing dissenting opinion.

PFEIFER, J., dissenting.

{¶ 91} The fallout from this court's decision in *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116, has resulted not from a failure of legal analysis but from a failure in insurance policy drafting. The majority today tries to fix that problem. It focuses its criticism on this court's decision in *Scott-Pontzer,* but, in the end, it is the insurance policy language that is rewritten. The majority does not overrule *Scott-Pontzer*--it just makes it more affordable.

{¶ 92} The central dilemma in *Scott-Pontzer* was who is "You" in a corporate UM/UIM policy listing "You" as an insured? If "You" is the corporation, the coverage is illusory--a corporation is not capable of suffering physical or emotional damage, or even of shedding a tear. To find that "You" was the corporation would have meant that insurers had collected premiums for coverage that applied to no one. Certainly, no insurance company would purposely do that.

{¶ 93} The other possibility was that the "You" meant actual human beings--employees--capable of suffering injury. Was "You" someone or was it no one? The majority in *Scott-Pontzer* opted for the interpretation that the policy language had meaning and that coverage was available.

{¶ 94} Who constituted "You" was the sole ambiguity we needed to resolve in *Scott-Pontzer.* We followed our universal and longstanding precedent to construe ambiguities against the drafter of the contract, in this case, the insurer. From there,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849
**(Publication page references are not available for this document.)**

the rest of the policy language took over. There were no "in the workplace" or "in the scope of employment" limitations to the coverage. There were no ambiguities to resolve, because there was no limiting language even to consider.

{¶ 95} Today, the majority determines, as did the majority in *Scott- Pontzer,* that the answer to the question "Who is 'You?' " is "employees." It arrives at the same basic conclusion as the *Scott-Pontzer* majority, while pillorying that earlier decision. As in *Scott-Pontzer,* the majority here rejects outright the insurers' argument that, at best, the "You" means only employees driving covered automobiles.

{¶ 96} Resolving the ambiguity of "You" the same way the *Scott-Pontzer* majority did, the majority here has found a way for that interpretation not to harm insurers. It creates some new limitations of coverage for the corporate employees that it has determined are the actual insureds. Although insurers did not include these limitations in their policies, the majority reasons that they meant to. Despite the fact that the insurers in both *Scott-Pontzer* and in this case argued that being on the job for the employer was not sufficient for an employee driving a personally owned vehicle to qualify for UM/UIM coverage, the majority divines that an employee who is simply acting within the scope of his employment *is* covered. Apparently, this court knows the intent of the insurers better than the insurers do.

{¶ 97} This court in *Scott-Pontzer* determined what the policy said; today, this court determines what the policy should have said. By deciding that UM/UIM policies apply to employees acting within the scope of their employment, the majority acknowledges that coverage is actually far broader than the insurers were willing to concede. But by limiting the employees covered to include only those on the job, the majority has effectively swept away the bulk of *Scott v. Pontzer* claimants, and saved the insurers from their own policy language.

{¶ 98} The decision in *Scott-Pontzer* has little precedential value-- the insurance contract language it interpreted has been revised and is no longer in use. The majority is not fixing a hole in our jurisprudence that is going to adversely affect any future transactions.

{¶ 99} But let us review what this court does accomplish today: (1) overrules a four-year-old case, (2) achieves that by adopting the central tenet of the case this court attacks, and (3) writes in new coverage limitations to an insurance contract that is no longer in use.

{¶ 100} The three sitting justices who are in the majority have all been applauded as practitioners of judicial restraint. As to that restraint, I am reminded of the words of the character Inigo Montoya from the movie "The Princess Bride":

{¶ 101} "You keep using that word. I do not think it means what you think it means."

FN1. "No State shall * * * pass any * * * Law impairing the Obligation of Contracts * * *."

FN2. It may be argued that this statement supports the overruling of *King.* However, *King* stands strong under the stare decisis test articulated below.

FN3. In the field of insurance law, see, e.g., *Ferrando v. Auto- Owners Mut. Ins. Co.,* 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927, overruling portions of *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447; *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, overruling *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 590 N.E.2d 1228; and *Savoie v.*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2003 WL 22664383
100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849
(Publication page references are not available for this document.)

*Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, overruling *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 545 N.E.2d 83.

FN4. The Idaho Supreme Court will reverse itself when a decision has proven over time to be unjust or unwise. *State v. Humpherys* (2000), 134 Idaho 657, 660, 8 P.3d 652. Maine abandons precedent that "lacks vitality and the capacity to serve the interests of justice." *State v. Rees* (Me.2000), 748 A.2d 976, 977. Arkansas will break from precedent where adherence to the rule would cause great injury or injustice. *Aka v. Jefferson Hosp. Assn., Inc.* (2001), 344 Ark. 627, 641, 42 S.W.3d 508. Many states will part from cases that were wrong when decided. *Ex Parte State Farm Fire & Cas. Co.* (Ala.2000), 764 So.2d 543, 545-546; *State Commercial Fisheries Entry Comm. v. Carlson* (Alaska 2003), 65 P.3d 851, 859; *Southwestern Bell Yellow Pages, Inc. v. Dir. of Revenue* (Mo.2002), 94 S.W.3d 388, 390-391; *Shoup v. Wal-Mart Stores, Inc.* (2003), 335 Ore. 164, 174, 61 P.3d 928; *State v. Mauchley* (Utah 2003), 67 P.3d 477, 481. Others will not follow past decisions that are unworkable or poorly reasoned. *J & M Land Co. v. First Union Natl. Bank* (2001), 166 N.J. 493, 521, 766 A.2d 1110; *Riney v. State* (Tex.Crim.App.2000), 28 S.W.3d 561, 565; see, also, *Payne v. Tenn.* (1991), 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720.

FN5. Subsequent to the initial drafting of this opinion, the United States Supreme Court utilized a similar trifold stare decisis test in *Lawrence v. Texas* (2003), 539 U.S. ----, 123 S.Ct. 2472, 2482-2483, 156 L.Ed.2d 508. The test was synthesized by a dissenting justice: "Today's approach to *stare decisis* invites us to overrule an erroneously decided precedent * * * *if:* (1) its foundations have been 'eroded' by subsequent decisions, *ante* [539 U.S. ----, 123 S.Ct.] at 2482 [156 L.Ed.2d 508]; (2) it has been subject to 'substantial and continuing' criticism, ibid.; and (3) it has not induced 'individual or societal reliance' that counsels against overturning, *ante* [539 U.S. ----, 123 S.Ct.] at 2483 [156 L.Ed.2d 508]." Id. [539 U.S. ----, 123 S.Ct.] at 2489 [156 L.Ed.2d 508] (emphasis sic) (Scalia, J., dissenting).

FN6. See, e.g., *Bagnoli v. Northbrook Prop. & Cas. Ins. Co.* (1999), 86 Ohio St.3d 314, 715 N.E.2d 125; *Linko v. Indemn. Ins. Co. of N. Am.* (2000), 90 Ohio St.3d 445, 739 N.E.2d 338; *Kemper v. Michigan Millers Mut. Ins. Co.*, 98 Ohio St.3d 162, 2002-Ohio-7101, 781 N.E.2d 196; and *Ferrando v. Auto-Owners Mut. Ins. Co.*, 98 Ohio St.3d 186, 2002-Ohio- 7217, 781 N.E.2d 927.

FN7. Ante, ¶ 19

FN8. For example, there are currently 23 cases before this court that await this opinion. All told, there are over 90 *Scott-Pontzer* related cases pending before this court.

FN9. Some of the pending issues are whether *Scott-Pontzer* applies to policies issued to partnerships, schools, or collectively to a business and an individual; to fronting policies; or where the terms and conditions of coverage have been violated.

FN10. This is due to Ohio's 15-year statute of limitations on contract claims, R.C. 2305.06, and partially because insurers acted quickly to modify their policies after the *Scott-Pontzer* decision.

FN11. See, e.g., *Monroe Guar. Ins. Co. v. Kuba,* case No. 2003- 0213, 98 Ohio St.3d 1564, 2003-Ohio-2242, 787 N.E.2d 1229; *Sekula v. Hartford Ins. Co.,* case No. 2003-0729, 99 Ohio St.3d 1510, 2003-Ohio-3957, 792 N.E.2d 198; *McNeeley v. Pacific Employers Ins. Co.,* case No. 2003- 1302, 100 Ohio St.3d 1437, 2003-Ohio-5513, 797 N.E.2d 515.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849
**(Publication page references are not available for this document.)**


2003 WL 22461833, 100 Ohio St.3d 216, --- N.E.2d ----, 2003-Ohio-5849

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works